OF

# THE STATE OF NEW JERSEY.

## MAY TERM, 1892.

ALEXANDER T. McGILL, ORDINARY.

ABRAHAM V. VAN FLEET, VICE-ORDINARY.

JACOB W. WELSH and MATTHIAS T. WELSH, administrators
of John C. Welsh, late trustee for Alletta W. Brown,

*v.*

ALLETTA W. BROWN.

1. In an accounting between trustee and *cestui que trust* not under disability, annual receipts by the latter, containing accounts which credit the trustee with amounts paid for taxes upon the trust fund, amount to admissions that the sums thus credited were justly paid by the trustee, which, in absence of proof of fraud or mistake, are conclusive against the *cestui que trust*.

[387]

Welsh *v.* Brown.

2. Where the trustee is dead and the *cestui que trust* is a competent witness. to explain her receipts, yet remains silent, the court will not infer fraud or mistake in her receipts from suspicious circumstances alone.

3. Where a trustee has neglected to keep an account of his investments of the trust funds and of his receipts and disbursements of the same, and thereby expensive litigation has been occasioned and the courts have been deprived of means of being assured of the correctness of the accounting had, his neglect may be punished by resolving doubts against him and also by withholding compensation from him. In the case considered the latter of these punishments is inflicted.

On appeal from a decree of the orphans court of Morris county, which settles exceptions to the account of the administrators of the trustee.

*Mr. Alfred Mills,* for the appellants.

*Mr. George W. Forsyth,* for the respondent.

THE ORDINARY.

Catherine Welsh died on the 22d of April, 1874, leaving a will by which she bequeathed to her niece, Alletta W. Brown, the interest of $2,500, to be paid to her by the executor of the will, annually, during her life, subject to just deductions therefrom for taxes. John W. Welsh was appointed executor of the will. He died on the 9th of November, 1890, without having rendered a formal account as trustee of Alletta W. Brown. On the 1st of December, 1890, letters of administration upon his estate were granted to the appellants, and, in August, 1891, they prepared a final account of his trusteeship, which was duly filed with the surrogate of Morris county. By that account they charged the trustee with the principal of the trust fund, $2,500, together with interest upon it from April 22d, 1875, to July 22d, 1878, at the rate of seven per cent. per annum ; from July 22d, 1878, to April 22d, 1882, at the rate of six per cent. per annum ; from April 22d, 1882, to April 22d, 1884, at the rate of seven per cent. per annum ; for the year between April 22d, 1884, and April 22d, 1885, the sum of $157.50 ; from April 22d, 1885, to April 22d, 1886, the sum of $140, stating that $1,000 of the

Welsh v. Brown.

$2,500 principal had been invested for only ten months of that year, and after April 22d, 1886, to the time of accounting, at the rate of five per cent. per annum. They at the same time asked allowance for the trustee, for the payment of amounts equal to the interest thus charged to Alletta W. Brown, partly in cash and partly by credits for yearly taxes upon the trust fund, varying in amount, and also for commissions to the trustee at the highest rate permitted by the law. With this account they filed fifteen receipts signed by Alletta W. Brown, covering all the payments to her for which allowance was asked. The first of these receipts bears date on the 28th of April, 1876, and acknowledges the receipt of $175 from the trustee "for one year's interest or annuity due me from him under the will of Catharine M. C. Welsh, due on the twenty-second day of April 1876." In it Alletta W. Brown protests that the payment is not to prejudice her in a proposed suit against the trustee for interest for the first year after the testatrix's death. Such suit was, in fact, afterwards brought and decided adversely to her. *Welsh* v. *Brown, 14 Vr. 37.*

At the foot of this receipt is a short account, as follows:

"J. C. Welsh check................................................................ $153 75
Tax Bill.............................................................................. 21 25
                                                                               $175 00"

The second receipt is dated in May, 1877, and is for $175, "being one year's interest on $2500 from April 22, 1876 to April 22, 1877," under which, over the signature of Alletta W. Brown, is this short account:

"Check to my order............................................................ $153 35
Tax for 1880..................................................................... 21 65
                                                                               $175 00"

Each succeeding receipt is either for "one year's interest on $2500" or "in full of all interest on $2500" or "in full of interest due me," except the receipt given in 1885, which is for $157.50, "being the interest received on $2500 for one year," and each receipt has appended to it, over the signature of Alletta

W. Brown, a short account, similar to those above set forth,. stating the amount of cash received and the amount of the tax, the cash and tax being, together, equal to the whole amount receipted for. The only variations in the statement of those accounts are found in the receipts of May, 1879, and May, 1886,. the former of which is as follows:

"STATEMENT.

| | | |
|---|---:|---:|
| "Interest on $2,500 from Apl. 1st to July 1st, at 7 per cent........... | | $43 75 |
| Interest from July 1st to Apl. 1st at 6 per cent......................... | | 112 50 |
| | | 156 25 |
| Less tax........................................................................ | | 21 25 |
| | | $135 00" |

And the latter as follows:

| | | |
|---|---:|---:|
| | | $150 00 |
| "Tax on $1,500...................................................... | $29 25 | |
| Loss of interest on $1,000........................................... | 10 00 | |
| | | 39 25 |
| | | $110 75" |

To the appellants' account exceptions were filed, and thereupon the appellants asked leave and were permitted to strike from the allowance asked the taxes charged after the year 1886, when the rate of interest was reduced to five per cent., amounting in the aggregate to $143.56.

The exceptions were then heard and, after the hearing, the orphans court decreed in effect that the accountants should be charged with the sum of $10, which was specified in the account and in the receipt of Alletta W. Brown for 1886 as the loss of interest upon $1,000 of the trust fund during the year ending April 22d, 1886, and also that they should be refused allowance for taxes paid, and be charged with interest upon each sum deducted for taxes paid from the time when the interest from which they were respectively taken was payable, and allowed the trustee for commissions five per cent. on the interest paid after the 22d of April, 1886, but nothing upon the interest before that date, together with two per cent. upon the principal of the trust fund.

From this decree the administrators of Welsh have appealed, claiming it to be erroneous in each of the particulars stated.

It does not appear upon what reasoning the decree is based, but I assume that the $10 was charged, and commissions upon income from the beginning of the trust until 1886 were refused, because the orphans court believed that the trust fund had not been invested by the trustee until 1886, but had been mingled with his private funds and used by him for his own purposes, and hence, under familiar principles, in the absence of its appearing that greater profit than legal interest was earned by the fund, that he should pay simple interest. Such reasoning, if the facts upon which it rests can be regarded as established, justifies the additional charge of $10, and the fact of the trustee's willful non-investment of the fund, being a breach of trust, would ordinarily be sufficient cause to justify the disallowance of commissions. The allowance asked on account of the payment of taxes appears to have been denied because the court deemed it not to have been established that taxes had in fact been paid upon the trust fund. The difficulty in the case appears to be in the proofs.

The exceptant assuming, and, in view of the vouchers filed, I think rightly, the proof of her exceptions in the orphans court, both as to charge and discharge, produced a witness who testified that he had examined the record of mortgages and assignments of mortgages for Morris county, in which county the trustee resided, and had failed to find that during the term of the trust he had taken any mortgage in his name as trustee for Alletta W. Brown, and she also produced the books of tax collectors to show that in Washington township, in Morris county, where the trustee resided, no assessments for taxes had been made against him as trustee for Alletta W. Brown, except in the year 1879, when he claimed deduction from his taxes because of $2,500 indebtedness to himself as trustee for Alletta W. Brown. In the last-mentioned year the collector's book showed that the deduction claimed was allowed and that $2,500 was assessed to Mr. Welsh, as trustee, upon which the tax was $21.55, instead of $22.84, as stated in the receipt given by Alletta W. Brown.

Upon making this proof the exceptant rested.

Welsh *v.* Brown.

The accountants, to sustain their account, proved that five per cent., after 1886, was the prevailing rate of interest to be had upon mortgage of the character required for trust investments, and also produced tax receipts from the collector of taxes at Hackettstown, in Warren county, for the years 1882 and 1884. The tax receipt for 1882 recited that the tax was upon a "mortgage on Tim store House, in trust," and the tax bill of 1884 recited that it was to "John C. Welsh N. R. A. W. Brown." They also presented again the receipts of Alletta W. Brown already referred to, which were each admitted to have been signed by her.

Where an exceptant seeks to charge an account, the burden of proof is upon him, but it is not his duty to disprove the allowances claimed by an executor to which he excepts. The burden of proving such allowances to be just and proper is upon the accountant. The rule with respect to the burden of proof stands upon the fundamental principle that he who affirms must sustain.

The burden was upon the accountants in the present case to prove the payments of taxes for which they claimed allowance. This burden they assumed by the production of the receipts signed by Alletta W. Brown as vouchers. *Hoffman's Masters Office 81.* Those receipts each contain a short account stated between trustee and *cestui que trust,* and make *prima facie* proof for the accountants, because they are in substance admissions by the exceptant, not only of the amount of interest paid to her but also that credit for taxes to the amounts they specified was due to the trustee. They, however, were not conclusive upon her. It was admissible for her to show that they were the product of mistake or fraud and that the fact was otherwise than as admitted. *Whart. Ev. § 1130.* There was no proof that tax bills were surrendered for the receipts or that the trustee otherwise so acted upon the faith of the receipts that a contradiction of them now would be inequitable to him.

I conceive that the important question in this appeal at this point is, whether the exceptant's proofs are sufficient to overcome the evidential weight of the admissions of the receipts. The assessor's duplicates for Washington township showed that for

-eight years, at least, the trustee had not been assessed, at the place of his residence, on account of the trust fund.   The duplicate for the year 1879 exhibited that in that year he had not originally been assessed for the fund, but that he claimed its deduction from the assessment against himself individually, as an indebtedness due from him, and had it assessed against himself as trustee for Alletta W. Brown.   It appears that he was one of the commissioners of appeal who made this change of assessment. The tax of that year, as carried out upon the assessor's book, amounted to $21.25, yet at the next settlement with his *cestui que trust*, in April, 1880, he appears to have charged her $22.84, for which latter sum the accountants now claim credit.

The statute (*Rev. p. 1153 § 66*) provides that every person shall be assessed in the township where he resides for all personal estate in his possession or under his control as trustee, and (*Rev. p. 1155 § 70*) that in such assessment his representative character shall be specified.   It is claimed that by force of this statute and the presumption that the assessors, public officers, have performed their duties according to law, the absence of assessments against the trustee in the township in which he lived is plenary proof that, except in the year 1879, he did not pay taxes upon the fund in question.   But the fallacy of this insistment, with respect to all but the first year, becomes apparent when it is remembered that a recognized and usual security for the investment of trust funds is mortgage upon lands at any place within the state, and when reference is had to the supplement of April 17th, 1876, to the act concerning taxes (*Rev. p. 1163*), which provides that thereafter no mortgage or debt secured thereby shall be assessed for taxation unless a deduction therefor shall have been claimed by the owner of the land and allowed by the assessor, and that, in such case, such mortgage or debt shall be assessed for taxation by the assessor making such deduction, and the tax thereon shall be collected by the collector of taxes for the township wherein the mortgaged lands lie, and it becomes apparent that the township of a trustee's residence is not necessarily the only place where the trust fund in his hands may be taxed.

The exceptant also proved that a search of the records of mort-
gages and assignments of mortgages in Morris county failed to·
disclose any investments of the trust fund on mortgage in that
county. That very proof lends countenance to the suggestion
that the tax was imposed upon mortgage upon land outside of
Morris county. Besides, it appears that it would be natural for
the trustee to invest in another county, for he lived near the·
Warren county line, and was the president of a bank in Hack-
ettstown, in that county. Two tax receipts also are produced by
the accountants, one, of 1882, by the town collector of Hacketts-
town, for $54, "to John C. Welsh N. R. mortgage on Tim's·
store in trust," and the other, of 1884, for $46.25, by the same
collector, to "John C. Welsh N. R. Alletta W. Brown." Pre-
cisely these amounts, for the respective years named, appear to·
be recognized in the receipts sought to be contradicted. I note
in the account another significant circumstance—that for each of
the years 1882 and 1883, the interest paid to Alletta Brown was·
$175, seven per cent. upon the trust fund, instead of the legal
rate of six per cent. which had theretofore for three years or·
more been paid, and that in 1885, $157.50, an amount also in·
excess of six per cent., was paid to her. I also note that the·
receipt for the last-named amount, instead of styling that amount
one year's interest on $2,500 &c., as the preceding receipts had
done, said of it, "the interest received on $2,500" &c. I think
it is fairly inferable that in the years 1882, 1883 and 1884, at
least, the fund was invested outside of Morris county. Here,.
then, is evidence of investment where tax may have been legally
imposed. May not similar investment had been had throughout
the other years for which tax is allowed? In answer to this
question it is urged that the proofs fairly warrant the inference
that the trustee did not invest the fund at all prior to the year
1882, and to support this insistment attention is called to the·
deduction of the trust fund as a personal indebtedness of the·
trustee in the year 1879 from his individual taxes at the place·
of his residence, and to the fact that the tax upon the fund then·
amounted to $21.55, and that from the commencement of the·
trust until 1882 the tax credited in the receipt of each year

varied from the amount of the tax in 1879 only a few cents, indicating a uniform rate with that tax, and to the fact that until July, 1878, seven per cent. upon the fund was accounted for, and then, at the same time with the change in the legal rate of interest, the rate paid to the *cestui que trust* correspondingly changed. It is argued that while it is possible it is highly improbable that so speedy a change in the rate of interest upon a secure investment would be made. Besides, there is another circumstance—the trustee kept no account of the fund and its investments, and no documents of any kind to show what investments. had been made, so that neither the *cestui que trust* nor the administrators of his estate are now able to ascertain whether in fact the fund was invested and how it was invested.

It is insisted that, if the court is in doubt whether it should draw the suggested inference, the last-stated circumstance will justify it in resolving that doubt against the trustee. If the inference contended for be drawn, then, as there was no investment, the trustee could not have been lawfully assessed for taxes upon any fund anywhere but in the township where he resided, and, as it has been shown that he was in fact assessed in that township for the fund in the year 1879 only, all his charges for taxes from 1875 to 1882, except 1879, were without justification.

The difficulty in making this inference lies in the facts that it is sought in behalf of Alletta W. Brown and contradicts admissions made in her receipts to the trustee which she has not essayed to explain. She appears to have been a competent witness in the case. The administrators, it is true, stand in the proceedings in a representative capacity, but one of them voluntarily testified to establish a transaction of the decedent whereby the trust fund was invested at a lower than a legal rate of interest. That testimony, as I understand the decision of the court of errors and appeals in *McCartin* v. *McCartin, 18 Stew. Eq. 265,* invested her with capacity to explain the transaction in which her receipts were given, yet she did not offer herself as a witness. She was able to speak and explain her admission and the circumstances. under which they were made, but she neglected to do so, and,

notwithstanding that neglect, urges the court to overcome those admissions by mere inference. Under the circumstances, I think I should not do so. Her suspicious silence precludes my ability to do so with any degree of satisfaction. The situation which, it is insisted, demands the inference, it is true, awakens strong suspicion, bearing upon which the testimony of Mrs. Brown must have material effect either in inducing complete conviction or in dispelling suspicion, but, as the case stands, that suspicion is not met by frank explanation, but by a suspicious silence, upon the part of the very person who insists upon deriving benefit from it, and that silence alone suggests a possible explanation which precludes the inference. I do not think that the *prima facie* evidence which the receipts furnish has been overcome, and I therefore conclude that the decree of the orphans court, in so far as it refuses allowance for the taxes alleged to have been paid, should be reversed. It is, however, manifest that there is a mistake in the amount claimed for the taxes of 1879. The correct amount for that year is $21.25, and not $22.84, as charged. The difference between those sums, with interest, should be charged against the accountants.

I have regarded it a sufficient answer to the objection that all the trustee's investments could and should have been made free from tax; that Mrs. Brown from year to year recognized the course of investment adopted, by acquiescing in the reduction of taxes from income, and that at this late date she should not be permitted to complain of conduct which she thus encouraged.

Upon the same reasoning by which I have been controlled with reference to taxes, I think that the $10 loss of interest on $1,000 during the year 1885 should be allowed to the accountants. By her receipt of May, 1886, Mrs. Brown admits this loss. She has not seen fit to show that this omission was the product of either fraud or mistake. I think that she is bound by it.

In determining the allowance of commissions to the trustee, the orphans court evidently proceeded upon the ground that there was no investment of the trust funds prior to 1886, and, for that reason, that commissions upon income should not be allowed ex-

Gordon's Case.

cept from that time. It gave a commission upon the principal and upon the income after 1886.

I do not think that the trustee should have been allowed any commission. The difficulty in this case has grown out of his failure to keep an account of his investments, receipts and disbursements or to preserve documents or memoranda by which they might be ascertained in a satisfactory manner. His neglect in this respect has occasioned an expensive litigation, and has deprived the courts of means by which they can be fully assured of the reliability of the few vouchers he kept and of the justness of their own conclusions. This neglect may be punished by resolving obscurities and doubts against the trustee (*Easton's Trust, 8 Stew. Eq. 60; S. C. on appeal, 8 Stew. Eq. 348; Ackerman v. Blauvelt, 8 C. E. Gr. 495; S. C. on appeal, 10 C. E. Gr. 570; Dufford v. Smith, 1 Dick. Ch. Rep. 222*), and also by depriving him of compensation. *Elmer v. Loper, 10 C. E. Gr. 475, 482; Dufford v. Smith, supra.* The condition of the evidence in this case, for reasons already stated, has precluded the former of these punishments, but it is admissible and due to the administration of justice that the latter punishment shall be inflicted. I therefore deem the decree below to be erroneous in allowing any commissions to the trustee.

My conclusions lead to a reversal of the decree of the orphans court.